**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES MCLAUGHLIN,** | : | **Civil No. 1:13-CV-2851** |
| | : | |
| **Plaintiff** | : | **(Judge Kane)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **LT. HART, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of the Case

#### A.   Introduction

This case illustrates how the procedural posture of a case may define and determine the extent to which the merits of the litigation can be resolved.  The plaintiff, a state inmate,  has filed a *pro se* complaint which he later amended.  (Docs. 1 and 10.)  Both of these complaints contained detailed factual narratives, and the amended complaint set forth some 99 factual averments.  (Id.) Notwithstanding the level of factual detail provided by McLaughlin in his complaints, defendant Ianuzzi has moved to dismiss the amended complaint alleging that the amended complaint may be subject to dismissal on multiple grounds, and arguing that McLaughlin failed to exhaust his administrative remedies, and has failed to state either an Eighth

Amendment claim or a claim of retaliation.  While these are potentially meritorious defenses, defendant Ianuzzi raises these objections to the complaint through a motion to dismiss, where our review is cabined and confined to the pleadings themselves. Recognizing how the procedural posture of this motion limits our review, for the reasons set forth below we recommend that the motion to dismiss be denied, without prejudice to the filing of a summary judgment motion raising these defenses on a more fully developed factual record.

## B.      Factual and Procedural Background

This lawsuit began on November 22, 2013, when the plaintiff, a state inmate, filed a *pro se* complaint.  In his 34-page, 167-paragraph complaint McLaughlin alleged that three defendants, Lieutenant Hart, Sergeant Meyers, and Nurse Practitioner Ianuzzi, denied him orthopedic shoes which had been prescribed for the plaintiff in retaliation for his prior litigation activities, and violated his rights under the Eighth Amendment by displaying deliberate indifference to McLaughlin's serious medical needs.  (Doc. 1.)

In addition to these straightforward legal claims against these three defendants, McLaughlin's initial complaint named four additional defendants–Superintendent John Kerestes, Captain Geroski, and grievance coordinators Miller and Mason.  (Id.) As to these defendants, McLaughlin's allegations were largely premised upon their

supervisory status, coupled in some instances with McLaughlin's perception that they did not adequately look into various complaints and grievances which he may have lodged in the past.  (Id.)  As part of our legally-mandated screening review, we examined this complaint and found that McLaughlin had failed to state a claim upon which relief may be granted with respect to the supervisory and grievance processing defendants named in his complaint.  Therefore, we recommended that the Court dismiss the claims lodged against these defendants for failure to presently state a claim upon which relief can be granted, without prejudice to allowing the plaintiff to attempt to correct the deficiencies noted in this report and recommendation by filing an amended complaint.  (Doc. 9.)  The district court adopted this Report and Recommendation.  (Doc. 11.)

McLaughlin then filed 44-page, 99-paragraph amended complaint which repeated his Eight Amendment and retaliation claims against three defendants, Lieutenant Hart, Sergeant Meyers, and Nurse Practitioner Ianuzzi.  (Doc. 10.)  A comparison of the two complaints reveals that both complaints provide detailed factual narratives relating to the merits of McLaughlin's claims, but each described his efforts to exhaust his administrative remedies in slightly different ways. McLaughlin's initial complaint detailed the outcome of his initial administrative grievances relating to these matters.  (Doc. 1, ¶¶90-95.)  In contrast, McLaughlin's

amended complaint simply stated that the plaintiff fully exhausted his administrative remedies. (Doc. 10, ¶89.)

Defendant Ianuzzi has now filed a motion to dismiss pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure. (Doc. 20.) That motion advances the affirmative defense that McLaughlin has failed to exhaust his administrative remedies, albeit on an incomplete factual record which is largely confined to McLaughlin's own enigmatic assertions regarding administrative exhaustion, coupled with the defendant's bald assertion that McLaughlin did not fully exhaust his administrative remedies, an assertion which takes us beyond the pleadings. In addition, defendant Ianuzzi also seeks to dismiss McLaughlin's Eighth Amendment deliberate indifference claims, and his retaliation claims in this motion to dismiss, claims whose resolution typically entails examination of undisputed factual matters beyond the pleadings. McLaughlin has responded to this motion. (Doc. 32.) Therefore, this matter is now ripe for resolution.

While we find that there are substantial questions regarding whether McLaughlin has satisfied his administrative exhaustion requirements in this case, we conclude that those questions, and the related questions of whether the conduct here was retaliatory and violated the Eighth Amendment's prohibition on cruel and unusual punishment, should be thoroughly addressed on a complete factual record.

Therefore, we recommend that the Court deny the defendant's motion to dismiss on these grounds, but without prejudice to the filing of a fully documented summary judgment motion.

## II.   Discussion

### A.   Motion to Dismiss–Standard of Review

A motion to dismiss is designed to test the legal sufficiency of a complaint. Thus, Rule 12(b)(6) of the Federal Rule of Civil Procedure provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. Id. at 556. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds

of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotation marks omitted) (quoting Twombly, 550 U.S. at 555). Thus, "[a]t the motion to dismiss stage, we accept as true all factual assertions, but we disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements. See Iqbal, 556 U.S. at 678–79, 129 S.Ct. 1937; Twombly, 550 U.S. at 555–57, 127 S.Ct. 1955; Burtch, 662 F.3d at 220–21." James v. City of Wilkes-Barre, 700 F.3d 675, 681 (3d Cir. 2012). As the court of appeals has observed: "The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' Twombly, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' Id. A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " Burtch v.

6

Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

Thus, in assessing a motion to dismiss the court engages in a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In undertaking this task, the court generally relies only on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also, U.S. Express

<u>Lines, Ltd. v. Higgins</u>, 281 F.3d382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.") However, the court may not rely on other parts of the record in determining a motion to dismiss.  <u>Jordan v. Fox, Rothschild, O'Brien &Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).

### B.   The Motion to Dismiss the Amended Complaint for Failure to Exhaust Administrative Remedies Should Be Denied Without Prejudice to Renewal of this Claim on a Complete Factual Record

In this case, defendant Ianuzzi has moved to dismiss McLaughlin's amended complaint for failure to exhaust administrative remedies, arguing that the plaintiff's statements regarding his exhaustion of administrative remedies strongly suggests that the complaint is subject to dismissal for failure to exhaust.  This dispute, which comes before the Court on an incomplete factual record, may ultimately prove to be critically important because a failure to timely pursue these administrative remedies can have substantive significance for the plaintiff since the Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under. . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are

available are exhausted." 42 U.S.C. § 1197e(a). Section 1997e's exhaustion requirement applies to a wide-range of inmate complaints, including damages complaints like those made here. See Spruill v. Gillis, 372 F.3d 218 (3d. Cir. 2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000). While this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts. This rigorous enforcement is mandated by a fundamental recognition that § 1997e's exhaustion requirement promotes important public policies. Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000)(citations omitted). Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court. Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F.

9

App'x. 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x. 178 (3d Cir. 2006). This requirement of strict adherence to the timetables prescribed by prison grievance policies is compelled by the important policies underlying the PLRA. As the Supreme Court has noted: "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

In addition, it is axiomatic that, for inmates, full exhaustion is legal prerequisite to filing a federal civil rights lawsuit, and inmate-plaintiffs may not avoid this requirement by simply commencing a grievance, and then filing a lawsuit prior to completion of the grievance process. Ahmed v. Dragovich, 297 F.3d 201, 209 n. 9 (3d Cir.2002) citing Perez v. Wis. Dep't of Corr., 182 F.3d 532, 534–35 (7th Cir.1999) (observing "Congress could have written a statute making exhaustion a precondition to judgment, but it did not. The actual statute makes exhaustion a precondition to *suit*"); Neal v. Goord, 267 F.3d 116, 122 (2d Cir.2001) (holding that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after filing her complaint in federal court). Accord Jackson v. District of Columbia, 254 F.3d 262, 269 (D.C.Cir.2001); Freeman v. Francis, 196

F.3d 641, 645 (6th Cir.1999); <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1328 (11th Cir.1998); <u>Garrett v. Hawk</u>, 127 F.3d 1263, 1265 (10th Cir.1997)

This broad rule admits of one, narrowly defined exception. If the actions of prison officials directly caused, or contributed to, the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. See <u>Camp v. Brennan</u>, 219 F.3d 279 (3d. Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." <u>Davis v. Warman</u>, 49 F.App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," <u>Harris v. Armstrong</u>, 149 F.App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." <u>Davis v. Warman</u>, <u>supra</u>, 49 F.App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, was impeded in filing a timely grievance, or some other extraordinary circumstances intervened and prevented compliance with the grievance process, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance"

with this statutory exhaustion requirement.  Harris v. Armstrong, 149 F.App'x 58, 59 (3d Cir. 2005).  Nor can an inmate avoid this exhaustion requirement by merely alleging that the Department of Corrections policies were not clearly explained to him.  Davis v. Warman, 49 F.App'x 365, 368 (3d Cir. 2002).  Furthermore, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust.  Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003).  Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed.  Oliver v. Moore, 145 F.App'x 731 (3d Cir. 2005)(failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

Yet, while McLaughlin ultimately faces these exacting legal standards when addressing the question of administrative exhaustion, we do not believe that this issue can be resolved without full consideration of what steps, if any, McLaughlin took to fully satisfy his obligation to exhaust these administrative remedies, something that is unclear on the murky record before us.  Therefore, resolution of this issue entails, and requires, examination of matters outside the current pleadings.  The precise nature of McLaughlin's prior grievances remains unclear to us.  Indeed, the apparent conflicts in McLaughlin's descriptions of his exhaustion efforts cited by the parties

only serve to highlight this uncertainty.  In some instances, the resolution of these

disputed issues could excuse this failure to fully exhaust administrative remedies.

See, e.g., Brown v. Croak, 312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner

with failure to protect claim is entitled to rely on instruction by prison officials to wait

for outcome of internal security investigation before filing grievance); Camp v.

Brennan, 219 F.3d 279, 281 (3d Cir. 2000) (exhaustion requirement met where Office

of Professional Responsibility fully examined merits of excessive force claim and

uncontradicted correctional officers impeded filing of grievance).  At a minimum,

these unresolved questions create a factual dispute which calls for resolution of this

claim through a properly documented summary judgment motion, where undisputed

facts may be presented to the court for its consideration.  See, e.g., Knauss v.

Shannon, No. 08-1698, 2010 WL 569829 (M.D. Pa. Feb. 12, 2010); Born v.

Monmouth County Correctional Institution, No. 07-3771, 2008 WL 4056313 (D.N.J.

Aug. 28, 2008).  See also Small v. Camden Cnty., 728 F.3d 265, 270-71 (3d Cir.

2013), (discussing court's role in resolution of disputed factual issues relating to

exhaustion of administrative remedies).  Therefore, this affirmative defense still

remains unresolved and cannot be addressed through a motion to dismiss on the

current, incomplete factual record before us.  Accordingly, this motion to dismiss

should be denied, but without prejudice to the filing of a summary judgment motion, if appropriate.

**B.**     **McLaughlin's Eighth Amendment and Retaliation Claims Cannot be Resolved on the Pleadings**

Likewise, we conclude that McLaughlin's Eighth Amendment and retaliation claims cannot be resolved on the pleadings through a motion to dismiss, but rather must also, at a minimum, await a summary judgment motion.

Turning first to McLaughlin's Eighth Amendment deliberate indifference claim, this claim is governed by overarching and animating constitutional benchmarks which focus on factual matters relating to both the defendant's actions and intent.  As the United States Court of Appeals for the Third Circuit has observed:

> The Eighth Amendment protects against infliction of "cruel and unusual punishment."  However, "not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny."  Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).  "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  Id. (citation and internal quotations omitted).  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."  Id.
>
> Resolution of an Eighth Amendment claim therefore "mandate[s] an inquiry into a prison official's state of mind."  Wilson v. Seiter, 501 U.S.

14

294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).  Two considerations define that inquiry.  We must first determine if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections.  Id. at 298, 111 S.Ct. 2321.  If not, our inquiry is at an end. However, if the deprivation is sufficiently serious, we must determine if the officials acted with a sufficiently culpable state of mind.  Id.  In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain.  "What is necessary to establish an 'unnecessary and wanton infliction of pain ...' varies according to the nature of the alleged constitutional violation."  Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

Fuentes v. Wagner, 206 F.3d 335, 344-45 (3d Cir. 2000)

McLaughlin faces an exacting burden in advancing an Eighth Amendment deliberate indifference claim against defendant Ianuzzi, a prison care-giver.  To sustain such a claim, he must:

> [M]eet two requirements:  (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind."  Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted).  In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety."  Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are

deliberately indifferent to an inmate's serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 105 (1976).  To establish a violation of his constitutional right to adequate medical care in a prison setting, the plaintiff is required to point to evidence that demonstrates both (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain."  Estelle, 429 U.S. at 104.  Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or by "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106.  "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners."  Durmer, 991 F.2d at 67

(citations omitted).  Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate.  Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").  Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference.  See, e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')".  Gindraw v. Dendler, 967 F. Supp. 833, 836 (E.D. Pa. 1997).  Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services.  Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth

17

Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F. App'x at 197-198 (citations omitted).  In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional medical judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. See Taylor v. Norris, 36 F. App'x 228, 229 (8th Cir. 2002) (deliberate indifference claim failed when it boiled down to a disagreement over recommended treatment for hernias and decision not to schedule a doctor's appointment); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-35 (7th Cir.1996) (inmate's disagreement with selection of medicine and therapy for sickle cell anemia falls well short of demonstrating deliberate indifference); Sherrer v. Stephen, 50 F.3d 496, 497 (8th Cir.1994) (inmate's "desire for a replacement joint instead of fusion surgery is merely a disagreement with the course of medical treatment and does not state a constitutional claim"); Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir.1994) (prison provided escalating level of treatment for inmates's ailments over time, and inmate's disagreement with course of medical treatment was insufficient basis for Eighth Amendment violation); Czajka v. Caspari, 995 F.2d 870, 871 (8th Cir.1993) (inmate's mere disagreement with doctor's informed decision to delay surgery does not establish Eighth Amendment claim); Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir.1990) (inmate failed to prove deliberate indifference where his complaints represented nothing more than mere disagreement with course of his medical treatment); Lair v. Oglesby, 859 F.2d 605, 606 (8th Cir.1988) (disagreement about whether doctor

should have prescribed medication does not result in constitutional violation); <u>Martin v. Sargent</u>, 780 F.2d 1334, 1339 (8th Cir.1985) (Inmate failed to state facts indicating doctor deliberately disregarded his medical problem; inmate's disagreement as to proper medical treatment does not give rise to Eighth Amendment violation). Therefore, where a dispute in essence entails no more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference." <u>Gindraw v. Dendler</u>, 967 F. Supp. 833, 836 (E.D. Pa. 1997)(citations omitted).

However, in resolving these Eighth Amendment claims, the court's inquiry often goes beyond an assessment of the pleadings, to a consideration of the undisputed material facts of the case. Thus, the resolution of the merits of the case must frequently await a properly documented motion for summary judgment. <u>Compare</u> <u>Henry v. Wilson</u>, No. 06-1439, 131164 (W.D. Pa. Jan. 9, 2008) (denying Rule 12(b)(6) motion relations to Eighth Amendment deliberate indifference claim concerning Hepatitis C treatment), <u>with</u> <u>Henry v. Maue</u>, No. 06-1439, 2008 WL 5188834 (W.D. Pa. Dec. 10, 2008)(granting summary judgment on same claim). Here, McLaughlin alleges facts which would permit an inference that medical treatment was denied, or delayed, for non-medical reasons. We are bound by these

well-pleaded facts at this stage of the proceedings.  Therefore, the procedural posture

of this case, which comes before us on a motion to dismiss, simply does not permit

definitive judgments on the legal and factual inquiry which lies at the heart of an

Eighth Amendment claim.  Accordingly, the motion to dismiss this claim should be

denied, but without prejudice to the submission of a fully-documented summary

judgment motion.

Similarly, we cannot resolve McLaughlin's retaliation claim at this time, based

solely upon the pleadings.  A prisoner claiming that prison officials have retaliated

against him for exercising his constitutional rights must prove the following three

elements:  (1) the conduct in which he engaged was constitutionally protected; (2) he

suffered adverse action at the hands of prison officials; and (3) his constitutionally

protected conduct was a substantial motivating factor in the defendants' conduct.

Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002).  With respect to the obligation

to demonstrate that he suffered an adverse action, a plaintiff must demonstrate that

he suffered action that "was sufficient to deter a person of ordinary firmness from

exercising his rights."  Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

The third essential element to a retaliation claim is that there be a causal link

between the exercise of a constitutional right and the adverse action taken against the

prisoner.  Rauser, 241 F.3d at 333-34.  To establish this third, and crucial, component

to a constitutional retaliation claim, causation, McLaughlin must make an exacting

showing.  In this setting:

> To establish the requisite causal connection a plaintiff usually must
> prove either (1) an unusually suggestive temporal proximity between the
> protected activity and the allegedly retaliatory action, or (2) a pattern of
> antagonism coupled with timing to establish a causal link.  See Krouse
> v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir.1997);
> Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir.1997).  In
> the absence of that proof the plaintiff must show that from the "evidence
> gleaned from the record as a whole" the trier of the fact should infer
> causation.  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d
> Cir.2000).

Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

Moreover, when examining these causation issues, we are specifically admonished

that:

> A court must be diligent in enforcing these causation requirements
> because otherwise a public actor cognizant of the possibility that
> litigation might be filed against him, particularly in his individual
> capacity, could be chilled from taking action that he deemed appropriate
> and, in fact, was appropriate.  Consequently, a putative plaintiff by
> engaging in protected activity might be able to insulate himself from
> actions adverse to him that a public actor should take.  The point we
> make is not theoretical as we do not doubt that public actors are well
> aware that persons disappointed with official decisions and actions
> frequently bring litigation against the actors responsible for the
> decisions or actions in their individual capacities, and the actors surely
> would want to avoid such unpleasant events.  Thus, it would be natural
> for a public actor to attempt to head off a putative plaintiff with the
> unwarranted expenditure of public funds.  Courts by their decisions
> should not encourage such activity and, by enforcing the requirement

22

that a plaintiff show causation in a retaliation case, can avoid doing so as they will protect the public actor from unjustified litigation for his appropriate conduct. In this regard we recognize that often public actors such as those in this case must make a large number of decisions in charged atmospheres thereby inviting litigation against themselves in which plaintiffs ask the courts to second guess the actors' decisions.

Id. at 267-68.

"Retaliation for the exercise of a constitutional right is itself a violation of rights secured by the Constitution actionable under section 1983." White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990). In Allah v. Seiverling, the Third Circuit Court of Appeals held that, "government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right." 229 F.3d at 224-25 (quoting Thaddeus-X v. Blatter, 175 F.3d 378, 386 (6th Cir. 1999) (en banc)). Accordingly, the law of this Circuit is clear that a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied. Id. at 225.

Once a plaintiff has made a *prima facie* case, the burden shifts to the defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Carter, 292 F.3d at 158. When analyzing a retaliation claim,

23

courts are to bear in mind that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned. <u>Rauser</u>, 241 F.3d at 334.

The application of these legal principles often turns on the facts of a specific case. In this case, McLaughlin alleges that his proof of a retaliation claim against defendant Ianuzzi is based upon "a pattern of antagonism coupled with timing to establish a causal link." <u>Lauren W. ex rel. Jean W. v. DeFlaminis</u>, 480 F.3d 259, 267 (3d Cir. 2007). In that regard, McLaughlin alleges prior antagonism between himself and defendant Ianuzzi based upon a December 2012 grievance. (Doc. 10, ¶¶54-57.) McLaughlin then asserts that this antagonism manifested itself in August 2013, through efforts by defendant Ianuzzi to deny McLaughlin medication, persuade physicians to change medical recommendations for the plaintiff, and confiscate a cane used by the plaintiff. (<u>Id.</u>, ¶¶81-88.) While the temporal gulf between the December 2012 grievance and these August 2013 actions would typically be too great to allow for an inference of causation, <u>see, e.g.</u>, <u>DeFranco v. Wolfe</u>, 387 F. App'x 147 (3d Cir. 2010)(denying inmate cell transfer retaliation claim, two months temporal proximity insufficient); <u>Bailey v. Commercial National Insurance Co.</u>, 267 F. App'x, 167 (3d Cir. 2008)(employment discrimination-retaliation case, four months temporal proximity insufficient); <u>Richmond v. ONEOK, Inc.</u>, 120 F.3d 205, 209 (10th

Cir.1997) (3-month period insufficient); Hughes v. Derwinski, 967 F.2d 1168, 1174-

75 (7th Cir.1992) (4-month period insufficient);  Conklin v. Warrington Tp., No. 06-

2245,  2009 WL 1227950 (M.D.Pa. April 30, 2009)(two months temporal proximity

insufficient); Rogers v. Delaware, Dept. of Public Safety/DMV 541 F.Supp.2d 623,

627 (D.Del. 2008)(10 months insufficient);Brown v. Boeing, 468 F.Supp.2d 729

(E.D.Pa. 2007)(3-4 months insufficient); Lumban-Tobing v. Potter, No. 04-979, 2005

WL 2100691 (M.D. Pa. Aug. 30, 2005)(9 months insufficient temporal proximity, but

other proof creates factual issue precluding summary judgment), McLaughlin also

alleges that defendant Ianuzzi made statements which might permit such an inference.

In particular, McLaughlin contends that in August and September 2013, at the same

time that he took what the plaintiff claims were medically adverse actions, Ianuzzi

allegedly told McLaughlin that "he didn't care what his supervisor said" about his

conduct, apparently acknowledging an awareness of McLaughlin's past complaints.

In addition, McLaughlin asserts that Ianuzzi stated to the plaintiff: "when you're in

hell you have to deal with the devil," a statement which may also be construed in a

retaliatory fashion.  (Id., ¶¶84 and 87.)

Ultimately, these may be exceedingly thin reeds upon which to rest a retaliation

claim, particularly if the undisputed facts otherwise demonstrate that there was a

medical justification for the actions taken here.  We recognize, though, that these

statements and actions, that are alleged to have occurred contemporaneously in August and September 2013, may permit a finding of "a pattern of antagonism coupled with timing to establish a causal link." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). We are also mindful of the fact that at this stage of the litigation we must accept as true all of the well-pleaded allegations in the complaint. Therefore, at this juncture, where we are limited to an assessment of the pleadings themselves, it is recommended that we should deny this motion to dismiss without prejudice to the filing of a properly documented summary judgement motion addressing this claim.

## III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendant's Motion to Dismiss (Doc. 20), be DENIED, without prejudice to the defendant filing a fully documented summary judgment motion addressing these issues.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is

made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 15th day of October, 2014.

**_S/Martin C.  Carlson_**
Martin C. Carlson
United States Magistrate Judge