**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES MCLAUGHLIN,** | : | No. 1:13-cv-02851 |
| Plaintiff | : | |
| | : | (Judge Kane) |
| | : | |
| | : | (Chief Magistrate Judge Carlson) |
| **LT. HART, <u>et al.</u>,** | : | |
| Defendants | : | |

## MEMORANDUM

Before the Court is the Report and Recommendation of Magistrate Judge Carlson, recommending that Defendants' motions for summary judgment, (Doc. Nos. 62, 69), be granted. (Doc. No. 90.) Upon review of the Report and Recommendation and Plaintiff's objections thereto, (Doc. No. 92), the Court will grant Defendants' motions for summary judgment and adopt the Report and Recommendation.

**I.     BACKGROUND**

This case arises out of Plaintiff James McLaughlin's requests to purchase shoes with rigid sides and a pair of "high-top sneakers" from outside vendors. (Doc. No. 10.) On or about May 2007, Plaintiff sustained an injury to his right ankle at the State Correctional Institution at Frackville ("SCI Frackville") in Frackville, Pennsylvania. (<u>Id.</u> ¶ 9.) Plaintiff hyperextended his right foot, (Doc. No. 83 at 6), and the treating physician recommended a "[l]ace-up boot style arrangement with rigid side." (<u>Id.</u> at 7.)

On July 3, 2012, Plaintiff was transferred to the State Correctional Institution at Mahanoy ("SCI Mahanoy") in Frackville, Pennsylvania. (<u>Id.</u> ¶ 23.) Since his transfer to SCI Mahanoy, Plaintiff sought to purchase footwear from outside vendors, including: (1) an August 4, 2012 request for a pair of Nike ACG Rongbuk shoes from Mike's Better Shoes (Doc. Nos. 10 ¶¶ 25-28; 65-1 at 27); (2) a September 5, 2012 request for New Balance shoes and brown boots from

Union Supply Direct (Doc. Nos. 10 ¶¶ 29-34; 65-1 at 38); and (3) a March 7, 2013 request for a pair of Nike Air sneakers and Timberland boots from Union Supply Direct (See Doc. Nos. 10 ¶¶ 65-69; 65-1 at 56).  Prison officials rejected Plaintiff's outside purchase requests.

Upon having his requests rejected, Plaintiff filed inmate grievances on August 13, 2012 (Grievance No. 424237, Doc. No. 65-1 at 25-26), on September 19, 2012 (Grievance No. 429265, id. at 35-36), on October 15, 2012 (Grievance No. 432516, id. at 61-62), on November 19, 2012 (Grievance No. 437301, Doc. No. 83 at 58-59), and on March 18, 2013 (Grievance No. 452335, Doc. No. 65-1 at 50).[1]  In his grievances, Plaintiff challenged the denial of his requests for "medically prescribed orthopedic treatment" as discriminatory and unconstitutional.  (See Doc. Nos. 65-1 at 25-26, 35-36, 50, 61-62; 83 at 58-59.)  Plaintiff also cited the fact that physicians had regarded his requests to "purchase his own particular boots and high-top shoes" as "reasonable."  (Doc. No. 83 at 16; see Doc. No. 83 at 10, 14-15.)  Prison officials responded, in large part, by encouraging Plaintiff to select footwear from either the commissary or an approved vendor.  (See Doc. Nos. 65-1 at 24, 27, 38, 43, 49, 57, 60, 64; 83 at 64.)

Plaintiff James McLaughlin filed a civil rights complaint under Section 1983 on November 22, 2013 and amended the complaint on December 11, 2013.  (Doc. Nos. 1, 10.)  In his amended complaint, Plaintiff brings Eighth Amendment claims against Defendants Lieutenant Hart, Sergeant Meyers, and Nurse Practitioner Nelson Iannuzzi as well as a First Amendment retaliation claim against Defendant Hart.  (Doc. No. 10 at ¶¶ 91-99; see Doc. No. 11.)  Plaintiff alleges, inter alia, that Defendants Hart, Meyers, and Iannuzzi violated the Eighth Amendment prohibition against cruel and unusual punishment by interfering with "needed and

---

[1] Plaintiff submits evidence of additional grievances filed on August 2, 2013 (Grievance No. 472384, Doc. No. 83 at 65-66), on September 4, 2013 (Grievance No. 476218, Doc. No. 83 at 72), on September 8, 2013 (Grievance No. 476897, id. at 81), and on March 19, 2014 (Grievance No. 502662, id. at 89-90).

recommended orthopedic medical treatment."[2]  (Doc. No. 10 ¶¶ 92-95.)  On March 20, 2014, Defendant Iannuzzi filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. 20.)  The Court adopted Magistrate Judge Carlson's Report and Recommendation and denied Defendant Iannuzzi's motion to dismiss on November 4, 2014.  (Doc. Nos. 49, 52.)

Thereafter, on January 6, 2015, Defendants Hart and Meyers moved for summary judgment on all counts. (Doc. Nos. 62, 63.)  Defendant Iannuzzi similarly moved for summary judgment on January 29, 2015.  (Doc. Nos. 69, 71.)  On July 15, 2015, Magistrate Judge Carlson issued a Report and Recommendation, recommending that Defendants Hart, Meyers, and Iannuzzi's motions for summary judgment be granted.  (Doc. No. 90.)  Magistrate Judge Carlson reasoned that Plaintiff largely failed to exhaust his administrative remedies and that Plaintiff's claims also failed on the merits.  (Id.)  Plaintiff filed objections to the Report and Recommendation on July 28, 2015.  (Doc. No. 91.)

## II.    LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A "factual dispute is material if it bears on an essential element of the plaintiff's claim, and is genuine if a reasonable jury could find in favor of the nonmoving party."  Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014) (quoting Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 580 (3d

---

[2] In addition to alleging that Defendant Hart and Meyers "arbitrarily refus[ed] to process the outside purchase request[s]", Plaintiff contended that Defendant Iannuzzi refused to provide "recommended medical treatment" by "delaying access to a recommended treadmill treatment, attempting to 'doctor shop' a favorable recommendation, failing to provide adequate follow-up care," and confiscating Plaintiff's cane.  (Doc. No. 10 ¶¶ 94.)

Cir. 2003)). At summary judgment, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence demonstrating an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir.2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. Celotex, 477 U.S. at 322. With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant summary judgment when the non-movant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the non-moving party and more than "some metaphysical doubt as to the material facts." Id. at 252.

**III.   DISCUSSION**

In the Report and Recommendation, Magistrate Judge Carlson recommends that this Court grant Defendants' motions for summary judgment. (Doc. No. 90.) The Report and

Recommendation finds, inter alia, that: (1) the failure to provide Plaintiff with the "precise footwear of his choosing does not rise to the level of a constitutional infraction;" (2) Plaintiff provides no evidence of "deliberate indifference" on the part of Defendants; (3) Plaintiff, in fact, received "extensive" medical care at SCI Mahanoy; and (4) Plaintiff failed to exhaust all but one of his inmate grievances. (Doc. No. 90 at 1-2, 13, 25, 32.) Plaintiff objects to Magistrate Judge Carlson's findings regarding the exhaustion of administrative remedies and his Eighth Amendment claims.[3] The Court addresses Plaintiff's objections in turn.

### A. Exhaustion of administrative remedies

First, Plaintiff objects to Magistrate Judge Carlson's finding that Plaintiff failed to exhaust all but his October 15, 2012 inmate grievance. (Doc. Nos. 65-1 at 61-62, 90 at 13, 92 at 5-6.) Plaintiff contends that prison officials "impeded" his efforts to exhaust his September 19, 2012 grievance, (Grievance No. 429265, Doc. No. 65-1 at 35-36), by not providing Plaintiff with the facility manager's appeal response in a timely manner. (See Doc. Nos. 65-1 at 35-36; 92 at 6-8). Plaintiff's objection is unsupported by the record.

The Prison Litigation Reform Act of 1995 ("PLRA") "requires that prisoners seeking relief in federal court must first exhaust the administrative remedies available at the prison level." Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007) (citing 42 U.S.C. § 1997e(a)). The Pennsylvania Department of Corrections' Inmate Grievance System ("DC-ADM 804") sets forth

---

[3] Plaintiff also objects that the Report and Recommendation "completely disregarded all factual and evidential matter produced by the [P]laintiff." (Doc. No. 92 at 2, 4-5.) The Court has reviewed the Report and Recommendation and is unpersuaded by Plaintiff's objection. Plaintiff also contends that Defendant Iannuzzi violated Local Rule 7.8, inter alia, by filing a brief exceeding fifteen pages. (Doc. No. 92 at 3.) This objection is unpersuasive because Magistrate Judge Carlson has the "authority to determine when to overlook or excuse a departure from its own local rules." See Phoenix Global Ventures, LLC v. Phoenix Hotel Associates, Ltd., 422 F.3d 72, 75 (2d Cir. 2005).

the administrative remedies that apply in this action.[4] (Doc. No. 78-9 at 2-15.) Under DC-ADM 804, "an inmate must exhaust [] three levels of review and comply with all procedural requirements of the grievance review process." Burns v. Fike, No. 12-239, 2013 WL 5874582, at *4 (W.D. Pa. Oct. 31, 2013) (interior citations omitted).

Here, Plaintiff seeks to avoid being "held to strict compliance with this exhaustion requirement" by alleging that prison officials caused his procedure default. Id. (citing Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000)). Specifically, Plaintiff claims that he did not receive the facility manager's appeal response, issued on October 15, 2012, to his September 19, 2012 grievance, (Grievance No. 429265), until November 5, 2012.[5] (See Doc. Nos. 65-1 at 30, 34; 92 at 7-8.) Here, the record shows that the disputed facility manager's appeal response was simply "unanswered [by Plaintiff] on 10/15/12." (Doc. No. 65-1 at 34.) Even assuming arguendo that Plaintiff did not receive the October 15, 2012 response until November 5, 2012, (Doc. No. 78-10 at 4-5; 92 at 7-8), Plaintiff failed to timely appeal the response by waiting until March 1, 2013 to address the facility manager's appeal response. (Doc. No. 65-1 at 29-31, 34.) The Court is accordingly unpersuaded by Plaintiff's objection.

Having reviewed Plaintiff's grievance history, the record shows that Plaintiff did exhaust his administrative remedies at the prison level as to both his October 15, 2012 grievance,

---

[4] Plaintiff challenges the Grievance Procedural Manual submitted by Defendants Hart and Meyer as "abrogated by superseding DM-ADM-804." (Doc. No. 92 at 5.) The Court agrees and refers to the version of DC-ADM 804 that Plaintiff submitted on February 10, 2015. (Doc. No. 78-9 at 2-15.) Nonetheless, the Court is not persuaded that DC-ADM 804's revisions are materially different. Hall v. Shannon, No. 3:08-CV-1895, 2012 WL 1144635, at *2 n.5 (M.D. Pa. Apr. 5, 2012).

[5] Plaintiff also argues that he did not appeal his August 13, 2012 grievance, (Grievance No. 424237, Doc. No. 65-1 at 25-26), because "the desired relief was given at the initial review stage." (Doc. No. 92 at 7.) The record, however, shows that Grievance No. 424237 was denied on August 30, 2012 because Plaintiff should "select a different type of foot ware from an approved vendor." (Doc. No. 65-1 at 37.)

(Grievance No. 432516, Doc. No. 78-13 at 1-2, 12), and his November 19, 2012 grievance (Grievance No. 437301, Doc. No. 83 at 58-59, 62-64).[6] This Court's deviation from the Report and Recommendation's exhaustion findings, however, does not impact its review of the Report and Recommendation's merits analysis. As discussed below, Magistrate Judge Carlson found that Defendant's claims were "meritless at every stage," (Doc. No. 90 at 19, 25-33) and discussed at length the merits of Defendant's November 19, 2012 grievance (Id. at 30). Accordingly, the Court will adopt the Report and Recommendation's findings, excepting the finding that Plaintiff failed to fully exhaust his November 19, 2012 grievance.

### B. Whether Plaintiff's Eighth Amendment claims lack merit

Second, Plaintiff objects to Magistrate Judge Carlson's finding that Plaintiff's Eighth Amendment claims are meritless and unsupported by the record.[7] (Doc. No. 92 at 9.) In essence, Plaintiff contends that Defendants evidenced "deliberate indifference" to Plaintiff's serious medical needs by denying him the shoes and boots he requested. (Doc. No. 92 at 9-11.) Plaintiff's objection is overruled. As Magistrate Judge Carlson discussed, Plaintiff has failed to identify any act or omission demonstrating that Defendant Meyers, Iannuzzi, or Hart was deliberately indifferent to Plaintiff's serious medical needs. (Doc. No. 90 at 19, 25.)

"The Eighth Amendment, through its prohibition of cruel and unusual punishment, imposes a duty on prison officials to provide humane conditions of confinement, including adequate medical treatment." Johnson v. Stempler, 373 F. App'x 151, 153 n.1 (3d Cir. 2010)

---

[6] In his October 15, 2012 grievance, Plaintiff discusses how his October 7, 2012 injury could have been avoided had Defendant Meyers not "deliberate[ly] and consistent[ly]" denied a "previously medically approved orthopedic treatment." (Doc. No. 78-13 at 1.) Similarly, in the November 19, 2012 grievance, Plaintiff stated that prison officers attempted to circumvent previous medical recommendations by sizing Plaintiff's feet. (Doc. No. 83 at 58-59.)

[7] Plaintiff does not address his First Amendment claim against Defendant Iannuzzi in his objections to the Report and Recommendation. (Doc. No. 92.)

(citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). "A violation of the Amendment occurs when (1) a medical need is serious and (2) the acts or omissions by prison officials demonstrate 'deliberate indifference' to the inmate's health or safety." Hankey v. Wexford Health Sources, Inc., 383 F. App'x 165, 168 (3d Cir. 2010). As Magistrate Judge Carlson noted, the Third Circuit has "found 'deliberate indifference' in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (internal citations omitted).

Here, Plaintiff argues that he "has been and continues to be denied needed and recommended treatment of an orthopedist …. [because] D.O.C. (PCI) commissary could not and still cannot provide … High Top sneakers/shoes [Boots] with rigid sides." (Doc. No. 92 at 13.) Plaintiff's objection fails on two grounds. First, as Magistrate Judge Carlson noted, Plaintiff possessed and wore "high-top boots throughout the incarceration." (Doc. No. 90 at 29; see Doc. No. 71-4 at 119, 83 at 14.) For example, on December 19, 2012, a physician noted that Plaintiff had "some special shoes that help[ed] somewhat but he want[ed] to get some exercise shoes and he is going to purchase those next month." (Doc. No. 71-4 at 119.) Similarly, on July 12, 2013, a physician's consultation record stated that Plaintiff "has been allowed to purchase high-top sneakers in commissary." (Doc. No. 83 at 14.)

Second, the decision to reject Plaintiff's outside purchase requests did not constitute a denial of "needed or recommended medical treatment." The Pennsylvania Department of Corrections' policy that addresses outside purchases ("DC-ADM 815") provides in relevant part:

> Items available in the commissary cannot be purchased as an outside purchase. Outside purchase requests for other brands or styles of products that are offered

>for sale in the commissary will not be permitted. The only exceptions are for items: if the inmate's size is not available through the commissary ….

(Doc. No. 65-1 at 86.) Here, the recommended high-top sneakers were "readily available at the commissary," (Doc. No. 71-12 at 4), and prison officials encouraged Plaintiff to select footwear from either the commissary or an approved vendor.[8] (See Doc. Nos. 65-1 at 24, 27, 38, 43, 49, 57, 60; 64, 83 at 64.) Plaintiff's dissatisfaction with the footwear available at the commissary or through approved outside vendors is simply not "sufficiently egregious to rise to the level of a constitutional violation." Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (internal citations omitted). The Court will accordingly grant Defendants' motions for summary judgment and adopt Magistrate Judge Carlson's Report and Recommendation.

## IV. CONCLUSION

For the foregoing reasons, the Court will adopt the Report and Recommendation and will grant Defendants' motions to dismiss. An order consistent with this memorandum follows.

---

[8] Plaintiff repeatedly objects to the finding that "Mike's [Better Shoes was] no longer an approved vendor." (Doc. No. 92 at 11; see Doc. No. 65-1 at 27.) Indeed, the record indicates that Mike's Better Shoes was an approved outside vendor for footwear if the commissary did not carry the inmate's shoe size. (Doc. No. 83 at 42) (emphasis added). This factual dispute is, however, not material because Plaintiff failed to fully exhaust his administrative remedies concerning the August 6, 2012 denial of a pair of Nike ACG Rongbuk shoes from Mike's Better Shoes. (Doc. No. 65-1 at 22-23, 25-26); see Spruill v. Gillis, 372 F.3d 218, 222-23 (3d Cir. 2004).